## CARBON FUEL CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5176. Decided December 22, 1932. (17 P. [2d] 215.)

Irvine, Skeen & Thurman, of Salt Lake City, for plaintiff.

Geo. P. Parker, Attorney General, for defendants.

ELIAS HANSEN, J.

This is a proceeding to review an order made by the Industrial Commission of Utah directing the plaintiffs to pay for additional medical and surgical treatment to be given A. G. Pappas. The facts bearing upon the question which is brought here for review are as follows: At the time Mr. Pappas was injured, plaintiff fuel company was an employer of labor subject to the provisions of the Industrial Act of this state. It carried insurance with the plaintiff United States Fidelity & Guaranty Company. On May 24, 1926, A. G. Pappas was run over by a mine car while in the employ of plaintiff Carbon Fuel Company, at its mine in Carbon county, Utah. As a result of the accident he sustained "a fractured pelvis and dislocation of left astragalus anteriorly." On June 17, 1927, a medical advisory committee consisting of Drs. J. E. Jack, F. L. Peterson, and L. R. Cowan, appeared before the commission and stated that in their opinion Mr. Pappas was totally disabled—both of his legs were affected as was also his pelvis. In their opinion he could not enter competitive employment and he would probably always be compelled to use two sticks to walk. Under date of June 26, 1927, the commission wrote the insurance carrier that:

"We are enclosing to you herewith copy of conclusions made by Drs. Jack, Peterson and Cowan on examination of Mr. Pappas, June 17th, 1927. In view of the doctors' conclusions the Commission would respectfully suggest that you continue to pay Mr. Pappas compensa-

tion at the rate of $16.00 per week for a period of five years from the date of the injury. At the end of the five-year period the man should submit himself for re-examination to determine whether or not he should be paid compensation as provided in Section 3139 of the State Industrial Act.

"Trusting this will be satisfactory to all parties concerned and that the insurance carrier will continue the payment of compensation as herein suggested, we beg to remain."

The insurance carrier continued to pay compensation as suggested by the commission. Under date of November 20, 1928, the commission wrote plaintiff fidelity and guaranty company, informing it that Mr. Pappas had stated to the commission that he desired to secure the services of Dr. W. N. Pugh to give him further treatment. In that letter the commission also inquired of the fidelity and guaranty company if it would be willing to pay for the services of Dr. Pugh. The fidelity and guaranty company in reply to the inquiry stated:

"That our medical advice in regard to this case is that further operative procedure will not in any way benefit this patient to any great extent, but before passing any opinion in regard to aforesaid treatment, we would like to have a written report from Dr. Pugh, stating definitely what he intends to do and what results he expects to obtain after treatment."

It appears that Dr. Pugh treated Mr. Pappas, who paid the doctor for his services. Later Mr. Pappas applied to the commission for an order directing the Carbon Fuel Company or the fidelity and guaranty company to reimburse him for the money paid to Dr. Pugh for his services. After a hearing was had upon the application, the commission directed payment to be made as requested, but on a rehearing the order was vacated and the claim of Mr. Pappas was denied.

Under date of November 28, 1930, Mr. Pappas applied to the commission for further surgical and medical treatment to be paid for by the Carbon Fuel Company or its insurance carrier, the United States Fidelity & Guaranty Company.

After notice given to the parties interested, a hearing was had upon the application. Drs. S. C. Baldwin, L. N. Ossman, and John J. Galligan testified at the hearing. Their testimony was to the effect that if Mr. Pappas was given further surgical treatment he probably would be considerably benefited thereby; that a fee of $500 was a reasonable sum to be paid for the proposed operation; that hospitalization of from four to six months would be required, which hospitalization would probably cost about $400. It was further made to appear that the insurance company had paid compensation to Mr. Pappas as required by law and also had paid on account of medical, surgical, and hospital services rendered to Mr. Pappas the sum of $1,231.50. Under date of March 19, 1931, the commission made an order directing

"that the Carbon Fuel Company and/or the United States Fidelity and Guaranty Company, pursuant to Section 3147 of the State Industrial Act, be and they are hereby ordered to furnish additional medical, surgical and hospital treatment to the applicant A. G. Pappas, and to pay for said treatment as by law provided, it being understood the Industrial Commission of Utah is not ordering or making it mandatory on the part of the applicant to submit himself to further surgical treatment; that in case he voluntarily determines to submit to further surgical treatment, that the defendant employer and/or insurance company be and they are hereby ordered to proceed as herein provided."

Plaintiffs in this proceeding seek to have the foregoing order annulled. They complain of the order because, as the claim, it does not comply with the provisions of chapter 67, § 3147, p. 180, Laws Utah 1921, which provides:

"In addition to the compensation provided for in this Act the employer or insurance carrier, or the state insurance fund shall in ordinary cases also be required to pay such a reasonable sum for medical, nurse and hospital services, and for medicines, and for such other artificial means and appliances as may be necessary to treat the patient as in the judgment of the commission may be just, not exceeding the sum of $500.00; provided that if upon application to and investigation by the commission it shall find that in particular cases such an amount is insufficient, then and in such event the commission

shall determine and fix such a reasonable amount as under all the circumstances shall be fair and just.  *  *  *"

Plaintiffs contend that the commission did not by its order "determine and fix" a reasonable amount or any amount that they should pay for additional medical, surgical, and hospital treatment to Mr. Pappas, but, on the contrary, the amount which plaintiff may be required to pay under the order is without any limitation and for that reason the order is contrary to law.  No contention is made by plaintiffs that the commission was without authority to fix and determine some definite additional amount to be allowed to Mr. Pappas for further surgical treatment.  The sole ground upon which they attack the order is that it is not in compliance with law.  It is defendants' contention that the purpose sought to be accomplished by the Industrial Act is to give an injured employee such medical, surgical, and hospital treatment as may be necessary; that the cost of such treatment cannot be determined in advance; and that therefore the provisions of the act heretofore quoted in this opinion should be given a construction which will permit the commission to make an order such as the one under review.  It is further urged on behalf of the defendants that if the commission is required to determine and fix the amount that shall be allowed an injured employee for medical treatment in advance of the rendering of such treatment, "the statute fixes upon the Commission a duty which is impossible of accomplishment and hence by its very terms is void and not binding upon the Commission."  It will be noted that the Legislature has, by the act, fixed $500 as the maximum sum that the employer or insurance carrier shall be required to pay in ordinary cases for the treatment of an injured employee.  If, however, $500 is insufficient, then the commission may upon application and investigation "determine and fix such a reasonable amount as under all the circumstances shall be fair and just."  Under the provisions of the act the commission is without authority to direct an employer or its

insurance carrier to pay in excess of $500 for the treatment of an injured employee except upon application to and investigation by the commission. When the investigation is completed, the commission is by the act required to determine and fix a reasonable amount as under all the circumstances shall be fair and just. The act clearly contemplates that in reaching a conclusion as to what amount, if any, an employer or its insurance carrier shall be required to pay for the treatment of an injured employee, the commission shall take into consideration the interest of the employer and its insurance carrier as well as that of the employee. By fixing the maximum amount that may be allowed an injured employee for medical treatment in ordinary cases, the Legislature has signified an intention that the amount that an employer or insurance carrier shall be required to pay for medical treatment is not necessarily the actual cost of such treatment. So, also, in conferring authority upon the commission to grant an amount in excess of $500 for the medical treatment of an injured employee the Legislature did not fix as the sole basis for the award the sum that should be expended in receiving medical treatment, but, on the contrary, conferred upon the commission authority to determine and fix such reasonable amount as under all the circumstances shall be fair and just. Obviously one of the important circumstances which the commission should take into consideration in reaching its conclusion is the actual or probable costs of medical treatment received or to be received. If the actual or probable costs are reasonable in amount, such amount may well be controlling. But the language of the act clearly indicates that the Legislature intended that the commission should investigate circumstances other than costs before making its order. Among the other circumstances which would have a bearing upon the amount, if any, to be allowed, are: The nature and extent of the proposed treatment, the amount of relief that the injured employee will probably receive from the proposed treatment, the amount of liability, if any, which the

employer or insurance carrier will be relieved from paying as compensation as the result of the proposed treatment, and the amount that the employer or insurance carrier has already paid for medical treatment. It is easy to conceive of a state of facts where the employer or its insurance carrier may justly be required to pay part of the costs of additional medical treatment of an injured employee, but it would be clearly unjust to cast the entire burden of such treatment upon the employer or its insurance carrier. Thus if the probable benefit to be derived by the injured employee from the proposed treatment is slight and the expense of such treatment is very great, the employer or its insurance carrier may justly be required to pay a part but not the whole of the costs of such treatment. Moreover, the costs of a given medical treatment may well vary in amount. It may be large or small, depending upon the amount of money available for the treatment. Different persons of equal skill and ability may differ in their charges. If an injured employee is given unlimited power to incur expenses for medical and surgical treatment to be paid for by the employer or its insurance carrier, such authority is calculated to lead to the extravagant use of money and to cast upon industry an unnecessary burden. It was probably for such reasons that the Legislature required an injured employee to make application to the commission for medical treatment when he seeks to cast a burden upon his employer or its insurance carrier in excess of $500 for such purposes, and, likewise, similar reasons may well have prompted the Legislature to direct the commission to investigate all the surrounding circumstances before determining and fixing such a reasonable sum as it deemed fair and just. The fact that the commission may experience difficulty in fixing the amount, if any, that shall be allowed for medical treatment in a given case, does not, as urged by the defendants, render void the provisions of the act under review. In this case an application was made, and so far as appears the commission completed its investigation. No claim is made that

the order complained of is not final. The order fails to determine and fix the amount, or any amount, which the employer or its insurance carrier may be required to pay for further medical treatment of Mr. Pappas. In such respect the order does not comply with the provisions of the industrial Act, and therefore it should be, and accordingly it is annulled.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.