**RICHFIELD CARE CENTER and Utah State Insurance Fund, Plaintiffs,**

v.

**Lydia J. TORGERSON and Utah State Industrial Commission, Defendants.**

**No. 20412.**

Supreme Court of Utah.

Feb. 12, 1987.

Fred R. Silvester, Salt Lake City, for plaintiffs.

Michael R. Labrum, Richfield, for defendants.

HALL, Chief Justice:

Plaintiffs seek reversal of an award of compensation and medical benefits for aggravation of a preexisting industrial injury. The primary issue presented is whether the incident that caused the aggravation constituted "an injury as the result of an accident" within the purview of U.C.A., 1953, § 35–1–45 (Repl.Vol. 4B, 1974 ed.) (amended 1984). We conclude that it did and affirm the award.

Defendant Lydia J. Torgerson's employment with plaintiff Richfield Care Center consisted of dressing patients and preparing them for their daily routines. Many patients were totally helpless and were in need of physical assistance in performing normal daily activities.

On July 6, 1980, while assisting a patient to a chair, Torgerson lost her balance and was thrown against a wall and onto the floor. She suffered pain in her lower back, immediately reported the incident to her employer, and received medical treatment from Drs. Allen and Henrie. She also undertook physical therapy for six months and wore a back brace continuously thereafter.

On January 20, 1982, Torgerson was lifting a one hundred ninety-pound patient with one arm and reached with the other arm to straighten his T-shirt. In doing so, she felt a sudden pain in her lower back. She immediately reported the incident to her employer and sought medical attention the same day. She underwent conservative treatment for the next several months and finally surgery in September 1982 for a herniated disk.

Torgerson filed an application for benefits for the 1982 incident; plaintiff Utah State Insurance Fund denied liability and moved to join the Second Injury Fund because of the 1980 injury. Following a hearing, the administrative law judge concluded: "The 1980 incident was clearly an industrial accident, but no claim is made by the applicant for that incident. The only event for which a claim is being made is for the incident that occurred on January 20, 1982." Thereafter, the administrative law judge determined that the 1982 incident, in and of itself, did not constitute an "accident" and by order dated May 4, 1983, denied an award of benefits.

Torgerson sought and obtained leave to amend her application for benefits to include both the 1980 and the 1982 incidents. The administrative law judge vacated his order of May 4, 1983, and reopened the case. He then referred the matter to a medical panel for evaluation of the effects of the July 1980 incident and the January 1982 incident. The medical panel found:

As far as the herniated disk at L4–5 is concerned, it is the opinion of the Panel that this is related to the industrial accident. It is our opinion that this began with the injury of 1978, was aggravated by the injury of 1980, and was further aggravated and required surgery following the injury of 1982.

The medical panel also concluded "that the injuries of 1980 and 1982 did medically aggravate the pre-existing impaired condition of the Applicant" and fixed the total percentage of permanent physical impairment at seven and one-half percent—two and one-half percent attributable to conditions prior to the July 1980 injury, two and one-half percent attributable to the July 1980 injury, and two and one-half percent attributable to the January 1982 injury.

The administrative law judge adopted the findings of the medical panel as his own and awarded benefits for the 1980 injury and the 1982 incident as well, inasmuch as it was an accident that aggravated a previous industrial injury incurred in the same employment. Disability benefits were ordered to be shared two-thirds by the employer and one-third by the Second Injury Fund.

Plaintiffs do not challenge the award of benefits for the 1980 industrial injury. Their challenge goes only to the award of additional benefits for aggravation of the preexisting injury caused by the 1982 incident, their contention being that the 1982

incident arose out of the performance of ordinary work activities and therefore did not constitute a compensable accident. They cite and rely upon *Sabo's Electronic Service v. Sabo*[1] in support of their contention. However, the analysis of what constitutes an "accident" followed in the *Sabo* line of cases has since been abandoned in favor of the "unexpected result" standard espoused by the Court in *Allen v. Industrial Commission:*[2]

> We therefore reaffirm those cases which hold that an accident is an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury. We thus necessarily abandon the analysis of "by accident" in the *Redman* line of cases which predicates the "accident" determination upon the occurrence of an unusual event.[3]

■ The facts of the 1982 incident fit well within the rule of law as espoused in *Allen* because (1) the claimant's injury was work related and unexpected; (2) the legal causation test applicable to a claimant suffering from a preexisting condition which contributes to the injury, namely, that there be an unusual or extraordinary exertion (here, lifting with one arm a one hundred ninety-pound patient), was met; and (3) medical causation was amply established by the evidence. Application of the foregoing principles of law to the facts of this case supports our holding that the Commission's award was neither arbitrary nor capricious.

Plaintiffs' remaining contention is that the Commission erred in treating the 1980 and 1982 incidents as a single industrial accident rather than serially in apportioning liability between the employer and the Second Injury Fund.

■ *Jacobsen Construction v. Hair*[4] interprets U.C.A., 1953, § 35–1–69(1) (Repl.

Vol. 4B, 1974 ed., Supp.1983) (amended 1984), which provided that "the liability of the employer for such compensation ... shall be for the industrial injury only and the remainder shall be paid out of the second injury fund ..." and concluded that the employer's proportion of the liability for compensation is equal to the percentage of the permanent physical impairment attributable to the industrial injury. Thus, the Commission must consider separate accidents serially in order to determine the percentage of impairment attributable to each accident and the proportion the preexisting impairment bears to the total combined impairment.[5]

In the instant case, following the 1980 accident, Torgerson had a total impairment of five percent, two and one-half percent attributable to preexisting conditions and two and one-half percent attributable to the 1980 accident. Following the 1982 incident, Torgerson had a seven and one-half percent total impairment, five percent attributable to preexisting conditions. Thus, the proper apportionment of liability should be one-half to the employer and one-half to the Second Injury Fund for the benefits paid for the 1980 accident and one-third to the employer and two-thirds to the Second Injury Fund for the benefits paid for the 1982 accident.[6]

The case is remanded for the purpose of entering an order apportioning liability consistent with this opinion. No costs awarded.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**1.** 642 P.2d 722 (Utah 1982); *see also Farmers Grain Coop. v. Mason,* 606 P.2d 237 (Utah 1980); *Church of Jesus Christ of Latter-Day Saints v. Industrial Comm'n,* 590 P.2d 328 (Utah 1979); *Redman Warehousing Corp. v. Industrial Comm'n,* 22 Utah 2d 398, 454 P.2d 283 (1969).

**2.** 729 P.2d 15 (Utah 1986).

**3.** *Id.* at 22 (emphasis in original).

**4.** 667 P.2d 25 (Utah 1983).

**5.** *See Second Injury Fund v. Perry's Mill & Cabinet Shop,* 684 P.2d 1269, 1270–71 (Utah 1984).

**6.** The relatively low figures involved make calculation pursuant to the method found in *Perry's Mill* unnecessary.